IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLYDE WILLIAM THIGPEN,<br><br>    Petitioner,<br><br>vs.<br><br>TERRI L. GONZALEZ, Warden, California Men's Colony, East,<br><br>    Respondent. | No. 2:11-cv-01241-JKS<br><br>MEMORANDUM DECISION |

Clyde William Thigpen, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Williams is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California Men's Colony, East. Respondent has answered, and Thigpen has replied.

I.  BACKGROUND

Thigpen was convicted by a jury of two counts of aggravated assault (Cal. Penal Code § 245(a)(1)). In January 2008 the Sacramento County Superior Court found that Thigpen had two prior strikes and sentenced him to an aggregate, indeterminate prison term of thirty-five years to life. Thigpen timely appealed to the California Court of Appeal, Third Appellate District, which affirmed his conviction and sentence in an unpublished decision,[1] and the California Supreme Court denied review on March 12, 2010. Thigpen filed a petition for habeas relief in the Sacramento County Superior Court on April 26, 2010, which was denied in an unreported reasoned decision on May 25, 2010. Thigpen's subsequent petition for habeas relief

---

[1] *People v. Thigpen*, No. C058751, 2009 WL 5173786 (Cal. Ct. App. Dec. 30, 2009).

in the California Supreme Court was summarily denied without opinion or citation to authority on February 2, 2011. Thigpen timely filed his Petition for relief in this Court on April 29, 2011.

Because the facts underlying Thigpen's conviction are not germane to the issues raised in Thigpen's Petition, they need not be recited herein.

## II. ISSUES RAISED/DEFENSES

Thigpen raises three issues in his Petition: (1) ineffective assistance of trial counsel (failure to investigate Thigpen's mental health history); (2) prosecutorial misconduct (misstatement of burden of proof); and (3) ineffective assistance of appellate counsel (failure to raise issue of ineffective assistance of trial counsel). Respondent does not assert any affirmative defenses.[2]

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

---

[2] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2012).

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

time of the relevant state-court decision."[4]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[5]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[6]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[7]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[8]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial

---

[4] *Williams*, 529 U.S. at 412 (alteration added).

[5] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[6] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[7] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[8] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[9] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

and injurious effect or influence in determining the outcome.[10]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[11]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[12]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[13]  State appellate court decisions that summarily affirm a lower court's opinion without

---

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[11] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[12] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[13] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

explanation are presumed to have adopted the reasoning of the lower court.[14]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[15]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[16]  This is considered the functional equivalent of the appeals process.[17]

## IV.  DISCUSSION

For clarity and to avoid the unnecessary repetition the Court will address first Thigpen's second ground (prosecutorial misconduct) followed by his two ineffective assistance of counsel claims.

Ground 2:  Prosecutorial Misconduct

The jury was instructed with CALCRIM 220, which provides in pertinent part:

---

[14] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[15] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[16] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[17] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

> [A] defendant in a criminal case is presumed innocent. This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I should specifically tell you otherwise.
> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.
> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant is guilty beyond a reasonable doubt, he is entitled to an acquittal, which is finding of not guilty.[18]

Following these instructions, the Prosecutor, without objection, remarked:

> The standard of proof in a criminal case, you heard it multiple times already, is beyond a reasonable doubt. Okay? And I know you all heard that on television and other places as well. That's the standard in every criminal case across this country. Okay? And so any time you hear that someone has been convicted of a crime in the United States, that was the standard of the proof that was required to convict him of that crime.
> It's the highest standard in the law. There's no doubt about that, but it is not beyond all possible doubt, beyond an imaginary doubt or beyond a shadow of a doubt. Okay? It is not the type of thing where the jury, after hearing the evidence that's presented in court, which is the only evidence the jury is supposed to consider, goes back and starts wondering, "Well, what if this? It could have been that, or maybe this." Okay. No. The question is whether or not the evidence meets the burden of proof. Okay?
> That's based on a reasonable -- and that word, you will hear throughout -- or you have already heard -- throughout the jury instruction, over and over, the word, reasonable. What does that mean? How do you define reasonable? I suppose it could be different to every person, to some extent. But, certainly, it is the basis for which the jury system was formed. The only way to get to reasonable decisions in an agreeable fashion is to get 12 people and ask them to agree because, at least, collectively, between 12 people from the community, we get to a reasonable decision.
> So it is a reasonable comparison based on a entire comparison and consideration of all the evidence, okay?
> Sometimes, if you take one piece of evidence, isolate it and say, "Okay, well, based on that, I have some doubt; okay, now I am going to move on to another piece of evidence and look at that by itself; okay, well, now I'm not too sure about that," then you move on to another piece, you can never get a complete picture. And that's why you have to compare each piece of evidence, each piece of the testimony,

---

[18] Reporter's Transcript, Vol. II at 430-31.

everything that you have heard, not just looking at it individually, but as it relates to the rest of the evidence. Okay? It leaves you not having an abiding conviction of the truth of that charge. Again, that is legal terminology. You're here as jurors, you take your responsibilities seriously. If the evidence in this case meets the burden of proof, then you need to have an abiding conviction. That means you need to believe that that's the right decision for you to make as a juror.[19]

Thigpen contends that the prosecutor's comments constituted an erroneous definition of reasonable, which was not cured by the trial court's instruction. Thus, Thigpen argues, the jury was confused. The California Court of Appeal rejected Thigpen's position.

> [Thigpen] argues that the prosecutor's argument somehow "enlarged" on the reasonable doubt standard. He claims that "[t]he clear import of the prosecutor's statements was to convey the message that the jury system itself served as a guarantor that whatever they decided would be 'reasonable' and that the requirement that the jurors be left with an abiding conviction of guilt was met simply because, as jurors, they necessarily took their duties seriously."
> While we cannot say that the prosecutor's argument actually clarified the standard of proof to the jury, we do not agree that it in any way diluted it. Reasonable jurors would not have construed or applied the remarks in an improper fashion or understood the jury could convict based on proof of less than beyond a reasonable doubt. (See *Victor v. Nebraska* (1994) 511 U.S. 1, 6 [127 L.Ed.2d 583, 591].)[20]

Thigpen's argument, which for the most part applies to incorrect jury instructions—not misstatements by the prosecutor—misses the mark. Thigpen's argument butts against two principles clearly established by the Supreme Court regarding jury instructions. First, this Court must assume in the absence of evidence to the contrary that the jury followed the instructions given by the court.[21] Second, the "arguments of counsel generally carry less weight with a jury

---

[19] Reporter's Transcript, Vol. II at 453-55.

[20] *Thigpen*, 2009 WL 5173786 at *3.

[21] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis v. Franklin*, 471 U.S. 307, 323-24 & n.9 (1985) (discussing the
(continued...)

7

than do instructions from the court," and they "are not to be judged as having the same force as an instruction from the court."[22]

Here, the state court did not ignore the allegedly erroneous argument by the prosecutor, it merely held that, given that the jury was properly instructed by the trial court, the jury could not have reasonably construed or applied the ambiguous remarks as implying that they could convict on a standard of less than beyond a reasonable doubt. Thus, it cannot be said that the decision of the California Court of Appeal unreasonably applied federal law.[23] Thigpen is not entitled to relief under his second ground.

Ground 1: Ineffective Assistance of Trial Counsel

In the Probation Report submitted to the trial court prior to sentencing it was noted: "[Thigpen] also indicated that he was previously diagnosed with depression. He sees a psychiatrist and receives prescription medicines. At the time of this writing, [Thigpen] stated he could not recall the name of his medication and could provide no clarification concerning his mental health."[24] Thigpen contends that had his trial counsel investigated, discovered, and presented evidence of his mental health at the time of trial, it would have reduced his culpability for the crime. The Sacramento County Superior Court rejected Thigpen's argument:

---

[21](...continued)
subject in depth).

[22] *Boyde v. California* 494 U.S. 370, 384-85 (1990); *see Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations").

[23] *See Middleton v. McNeil*, 541 U.S. 433, 437-38 (2004).

[24] Clerk's Transcript on Appeal, Vol. I at 155.

Petitioner claims that trial counsel should have presented evidence that Petitioner suffered form dyslexia and psychiatric illnesses. First, he has failed to show that he suffered from dyslexia or any psychiatric illness at the time of trial. Evidence that he is currently being treated with psychiatric medication does not show that he had a mental illness during trial. Second, Petitioner alleges that his mental condition could have reduced his culpability under Penal Code section 28. Section 28 prohibits the introduction of evidence of mental disease, defect or disorder except on the issue of whether the defendant formed specific intent, or premeditated and deliberated. Petitioner was charged with assault with a deadly weapon and assault with force likely to cause great bodily injury. Those are crimes of general intent, not specific intent. (See e.g., *People v. Rocha* (1971) 3 Cal.3d 893.) Therefore, evidence that Petitioner suffered from dyslexia or psychiatric illnesses would not have been admissible for that purpose.[25]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Thigpen must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[26] A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[27] Thigpen must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[28] An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[29]

---

[25] Lodged Doc. 8 at 2.

[26] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[27] *Id*.

[28] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[29] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

9

The question of whether or not counsel has made an adequate investigation, is not "what is prudent or appropriate, but only what is constitutionally compelled."[30] While "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," an attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[31] "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[32]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[33]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[34]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the

---

[30] *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)).

[31] *Strickland*, 466 U.S. at 690.

[32] *Id*. at 690-91.

[33] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[34] *Id*. (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,] [which] is different from an *incorrect* application of federal law."[35]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[36]

The Sacramento County Superior Court held that, under California law, the evidence was inadmissible on the question of guilt.[37] It is well-settled that this Court in a federal habeas proceeding is bound by that determination.[38] Thus, with respect to Thigpen's guilt of the crimes, absent a claim of legal insanity, the evidence was inadmissible in any event. Therefore the failure of counsel to investigate and present evidence of Thigpen's mental condition could not have impacted the finding of guilt. Therefore, in that respect, even if counsel's representation was deficient, it fails *Strickland*'s second prong—prejudice.

---

[35] *Richter*, 131 S. Ct. at 785 (emphasis in the original).

[36] *Id.* at 786.

[37] Thigpen did not enter an insanity plea, nor does Thigpen contend that such a plea was appropriate.

[38] *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law); *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law.").

On the other hand, Thigpen's contention that it would have reduced his "culpability" raises an entirely different question—could it have impacted his sentence? Reading Thigpen's arguments liberally, as this court must,[39] the use of term "culpability" could refer not only to a conviction, but also to the sentence imposed.[40] Thus, if the evidence of Thigpen's mental deficiencies could have impacted his sentence, the failure of counsel to adequately investigate and present that evidence could have been prejudicial. This Court is not unmindful of the fact that mental deficiency in this area is generally raised as a violation of the Eighth Amendment's proscription on cruel and unusual punishment, an issue that Thigpen did not raise either before the California courts or this Court. However, because the cases cited by Thigpen involve the question of the defendant's mental capacity in the context of whether mitigating evidence should have been introduced,[41] this question was raised inferentially. In any event, this Court, in the interests of justice and giving the broadest possible interpretation to Thigpen's Petition, will consider it *sua sponte*. In so doing, this Court will also presume that the state courts addressed the issue on the merits.[42]

In making its analysis, this Court notes that, in addition to the fact they were decided under the Eighth Amendment, two factors involved in both the California and Supreme Court

---

[39] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

[40] Under California law, the characteristics of the defendant, e.g., culpability and mental capacity of the defendant, as well as the nature of the crime, are elements appropriately considered in imposing a sentence under some circumstances. *See, e.g., People v. Wallace*, 189 P.3d 911, 958-59 (Cal. 2008) (citing *People v. Leonard*, 157 P.3d 973 (Cal. 2007)); *People v. Hines*, 938 P.2d 388, 443 (Cal. 1997) (citing *People v. Dillon*, 668 P.2d 697 (Cal. 1983)).

[41] *E.g., Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Williams*, 529 U.S. at 396.

[42] *See Richter*, 131 S. Ct. at 785.

12

decisions that considered the impact of the defendant's mental capability in imposing a sentence were: (1) all death penalty cases; and (2) that the sentencing court had the discretion to impose a lesser sentence, i.e., imprisonment for life. The Court also notes that the Supreme Court has noted that "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."[43]

In this case, the trial court sentenced Thigpen to a statutorily mandated sentence of twenty-five years to life under the "three-strikes" law on the first count,[44] plus two consecutive terms of five years under Penal Code § 667(a), for an aggregate prison term of thirty-five years to life. On the second count, the trial court sentenced Thigpen to a prison term of twenty-five years to life, also under the "three strikes" law, to be served concurrently.[45]

The insurmountable hurdle that Thigpen faces is the fact that in this case the trial judge had no discretion to impose a sentence less than that imposed. The imposition of the two consecutive five-year terms was mandatory under Penal Code § 667(a), which states that "[t]he terms of the present offense and each enhancement shall run consecutive."[46] Thus, even had counsel investigated and presented evidence that Thigpen suffered from dyslexia or some other form of mental illness, it could not have affected either his conviction or his sentence. Therefore, there was no prejudice. Thigpen is not entitled to relief under his first ground.

---

[43] *Solem v. Helm,* 463 U.S. 277, 289-90 (1983) (internal alterations and emphasis omitted).

[44] Cal. Penal Code § 667(e)(2).

[45] Reporter's Transcript on Appeal at 561-62.

[46] *See People v. Quillar*, 263 Cal. Rptr. 337, 338-39 (Ct. App. 1989), *review denied* Feb. 14, 1990; *People v. Salazar*, 239 Cal. Rptr. 746, 747 n.2 (Ct. App. 1987).

Ground 3:  Ineffective Assistance of Appellate Counsel

Thigpen contends that, because appellate counsel did not raise the issue of his trial counsel's ineffectiveness on appeal, he was denied effective representation.  Thigpen's argument fails on two bases.  First, the failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[47]  Because, as noted with respect to Thigpen's first ground, his representation by trial counsel was not ineffective, appellate counsel's failure to raise it also did not constitute ineffective assistance of counsel.

Second, because the factual basis for his ineffective assistance of trial counsel claim was not of record, under California law that claim could not have been raised on appeal, but could only have been raised in a habeas proceeding.[48]  Thus, even if Thigpen's trial counsel were was, appellate counsel could not have been ineffective for failing to raise the issue on direct appeal. Thigpen is not entitled to relief under his third ground.

---

[47] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

[48] *See People v. Vines*, 251 P.3d 943, 978 (2011).

V.  CONCLUSION AND ORDER

Thigpen is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[49]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[50]

The Clerk of the Court is to enter judgment accordingly.

Dated: September 18, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[49] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 302, 327 (2003))).

[50] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.